EIGHTY-FIVE PARK AVENUE CORPORATION, Plaintiff, *v.* AMERICAN UNIVERSITY CLUB OF NEW YORK, INC., and Others, Defendants.

Supreme Court, Special Term, New York County, February 8, 1936.

*Talley & Lamb* [*Charles Lamb, James A. McKaigney, George D. Hornstein* and *Abraham Hornstein* of counsel], for the plaintiff.

*Cotton, Brenner & Wrigley* [*Roy F. Wrigley* and *Samuel Brenner* of counsel], for the defendant American University Club of New York, Inc.

VALENTE, J. This action involves a claim for damages arising from an alleged breach of contract. It has come up in Special Term because the plaintiff also asks that a certain escrow deposit of $35,000 left with the Chemical Bank and Trust Company by the defendant corporation be turned over to the plaintiff. A brief statement of the facts as they developed at the trial is as follows:

Plaintiff acquired title to certain property known as Eighty-five Park avenue from the Bowery Savings Bank. Under the agreement with the bank the plaintiff was to make certain alterations to the premises; the bank agreeing to furnish $150,000 to the plaintiff after proof by an architect's certificate that the latter had expended $100,000 for that purpose in accordance with the plans and specifications. This sum of $150,000 was to be added to the face amount of the mortgage owned by the Bowery Savings Bank, to which the property was to be subject. Shortly thereafter, on or about the 19th day of July, 1932, plaintiff entered into an agreement of sale to defendant American University Club of New York, Inc., by the terms of which the club agreed to buy the premises upon long-term payments with title to pass after a number of years. As a first payment the sum of $35,000 was to be deposited in the Chemical Bank and Trust Company to be used only for the construction of the building, which the seller stipulated to erect. While this edifice was intended largely for the use of the defendant American University Club of New York, Inc., it also was to contain stores and apartments which the seller was authorized to lease for its benefit until such time as title closed. The club itself expected to make payment of the consideration largely from initiation fees and membership dues received. The $35,000 was not payable to the seller until a certificate of one Robert Eidlitz, architect and builder, was furnished to the effect that not more than $150,000 was the amount necessary to complete the construction of the building. The time of completion was provided for by the following clause, which plays an impor-

tant part in this litigation: "Said building shall be completed by the seller on or before February 1, 1933, unless the seller shall be prevented from completing the same by causes not within his control, including the obtaining of the possession of the premises, in which event the time of completion shall be extended accordingly."

Building operations were begun by the plaintiff somewhat belatedly, and, after the expenditure upon construction of less than $40,000, were suspended toward the end of November, and no work done in December and January. On the thirtieth day of December defendant notified plaintiff that, unless within a very few days plaintiff showed its financial ability to fulfill the contract, it would be canceled. No reply was received to this letter. On February 1, 1933, plaintiff was notified of the rescission of the contract by reason of the fact that no building operations had been done, except in a preliminary way, and that they had ceased entirely for several months. The letter also demanded the escrow deposit of $35,000. As a result of the rescission, plaintiff brought an action the next month treating defendant's notification as an anticipatory breach of contract, and made a demand that the escrow deposit be turned over to it. The individual defendant, though made a party, was not served.

If defendant's rescission was justifiable, it is entitled to a restoration of the *status quo* and to the return of the deposit of $35,000. Plaintiff's cause of action is predicated upon the fact that defendant's rescission was groundless, because, by reason of circumstances beyond its control, plaintiff was entitled to four months beyond February 1, 1933, for completion of the building. Defendant's act of rescission, plaintiff argues, was an anticipatory breach which excused the plaintiff from further tender of performance, and entitled it to damages as well as to the $35,000 escrow deposit.

Upon the trial charges and counter charges were brought as to the causes of the delay; plaintiff contending that it was caused by defendant's change of plans for the facade on Park avenue and by other excusable causes stipulated in the contract, over which plaint ff had no control. Defendant showed that the delay in obtaining title to the entire premises played only a minor part and that the changes in plans were caused by plaintiff, rather than defendant. It is unnecessary to consider this phase of the subject with any degree of circumspection, because up to the month of December neither side seemed to complain much about the delay. Both seemed to have in contemplation the probability that the performance could not be completed by February 1, 1933. Plaintiff claims that the several delays excusable under the contract extended the time of performance to June 1, 1933. On

the other hand, even if we accept plaintiff's contention that defendant's architects realized, on December 20, 1932, and acquiesced in, the requirement of 105 working days to complete the job, a situation is presented where the work would have been completed about the middle of May, because 105 working days constitute five elapsed months. What happened, however, at about the period when work ceased, is that plaintiff found itself without any finances to go ahead. It attempted to obtain the $150,000 stipulated in its agreement with the Bowery Savings Bank. It was refused that sum, however, because it could not present a certification to the effect that only $150,000 was necessary to complete the building. As a matter of fact, it would seem that at least $200,000 was necessary to complete the work. For the same reason it could not obtain the escrow deposit of $35,000 made by the defendant.

If the Bowery Savings Bank were the only source of financial assistance within the contemplation of both parties, plaintiff might argue that the failure of the bank to make the advance of $150,000 was a circumstance beyond its control. But it cannot be so regarded, especially in view of the fact that the inability of the plaintiff to obtain the sum from the bank was caused by its own default. It was perfectly in order for the defendant, which knew about the refusal of the Bowery Savings Bank to make the premature advance, to warn plaintiff that, unless it showed effective progress, which only financial ability could guarantee, the contract would be canceled. Notwithstanding that warning, the month of January elapsed without any work whatsoever being performed on the building. Even under the most favorable extension of the time for performance, the idleness during the month of January meant that the building could not be completed by June 1, 1933. Thus defendant's rescission was caused by what was tantamount to plaintiff's abandonment of the work. Even if a resumption by plaintiff occurred after its cessation, it would still be impossible for the plaintiff to complete the work within the liberal extension of four months, which is the utmost claimed by the plaintiff. Under these circumstances, defendant was justified in rescinding, and its act was not premature. The effect of rescission is to restore the parties to the *status quo ante* and to entitle the defendant to the restoration of its escrow deposit. This would dispose of any claim on the part of the plaintiff to the escrow deposit of $35,000.

There is no basis to plaintiff's grievance that defendant should have allowed it to complete enough work so as to become entitled to the $35,000 escrow deposit. If plaintiff had been permitted

to withdraw it, under the architect's certificate, the defendant on rescission, by reason of plaintiff's ultimately inevitable breach, would nevertheless have been entitled to its restoration. As rescission was justified and the contract is an entire one, plaintiff in any event would not be entitled to the $35,000 deposit, or to any part of it.

There must be judgment for the corporate defendant dismissing the complaint on the merits, with costs, and a decree declaring that it is the owner of the escrow deposit of $35 000. Submit findings and judgment, on notice.